147

(C. D. 813)

SYNTHETIC PATENTS CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided November 10, 1943)

*Eugene R. Pickrell* (*Eugene A. Chase* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Richard F. Weeks,* special attorney), for the defendant.

Before OLIVER, WALKER, and COLE, Judges

COLE, Judge: A product invoiced as "Cholic acid—Pharmaceutical coal-tar product," was exported from Leverkusen, Germany, in May 1940, and entered at the port of New York, in July 1940. The collector accepted the invoice description as representative of the true character of the merchandise and accordingly classified it as a medicinal coal-tar product under paragraph 28 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 28), and assessed duty thereunder at the rate of 45 per centum ad valorem and 7 cents per pound. Defendant now concedes that such classification is erroneous, so the case is before us to determine which, if any, of protest claims applies to the merchandise.

Plaintiff contends that the cholic acid in question is properly classifiable as a drug, free of duty under paragraph 1669 (19 U. S. C. 1940 ed. § 1201, par. 1669), as being in a crude state. Other claims in the protest, that the merchandise is dutiable at 10 per centum ad valorem under paragraph 34 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 34), as a drug advanced in value or condition,

or at 25 per centum ad valorem either as a medicinal preparation under paragraph 5 (19 U. S. C. 1940 ed. § 1001, par. 5) or as an acid not specially provided for under paragraph 1 (19 U. S. C. 1940 ed. § 1001, par. 1), were not upheld by plaintiff in its brief. The Government counsel, however, argue in their brief for classification as a medicinal preparation under paragraph 5, *supra*. The view we take will not permit either said paragraph 1669 or 5 to apply, but rather paragraph 34, *supra*, which is included in the protest and not abandoned by the plaintiff.

A well-qualified research chemist, the only witness who appeared in the case, testified on behalf of plaintiff. He stated that he is employed by Winthrop Chemical Co., a firm that uses the imported merchandise in one of its products and owns a large interest in plaintiff corporation. He testified that he had prepared cholic acid both in this country and in Germany, where he was educated and worked in the biochemical field. He further testified that the imported cholic acid is a natural bile acid obtained from bile material of animal origin, including humans, by a process of extraction from its natural source and subsequent fractional crystallization, describing it as follows: "For instance, bile stones are taken, ground up and washed, and they are extracted, for instance, with acetone, under certain conditions. The acetone extraction is taken, concentrated to a certain point, and cholic acid, together with a few other bile acids, is obtained; and by fractionation crystallization, for instance, it can be obtained in a pure state."

The uncontradicted testimony further establishes that the imported commodity is used for medicinal purposes, and that throughout its entire processing period the therapeutic qualities inherent thereto never change. In other words, it possesses the same medicinal strength and value in its imported condition as it did when first acquired in the natural bile material. It is used to correct deficiency in bile production, and because such a condition "is also combined with an obstruction of the ducts which lead the bile from the place of production into the intestinal tract," the cholic acid is never administered by itself but always compounded with a spasmolytic agent, "which will relieve the spasms of the smooth muscle" and "smoothen out the passages through which this increased bile will flow." The witness referred to commercial usage of the merchandise by his firm in a product marketed as "Chovanol," in which the imported cholic acid is combined with cinnamyl ephedrine and diamino acridine, and the preparation offered as a remedy for the condition hereinabove described.

The classifications invoked by plaintiff, as stated, include an *eo nomine* designation (paragraph 1, *supra*), and three provisions (paragraphs 34, 1669, and 5) predicated on the use of a commodity *United States* v. *Wm. Cooper & Nephews, Inc.* (22 C. C. P. A. 31, T. D. 47038).

Under a well-recognized tariff principle, the latter prevail over the former. *Henry Pels & Co.* v. *United States* (27 C. C. P. A. 1, C. A. D. 51). Therefore, even though the cholic acid in question is in fact an acid and as such specifically provided for in said paragraph 1, its exclusive use for medicinal purposes removes it from classification thereunder, as conceded by plaintiff in its brief, and we so hold.

In *Synthetic Patents Co., Inc.* v. *United States*, C. D. 803, a case decided by us as late as September 10, 1943, we held the pancreatic hormone under consideration to be a medicinal preparation on the factual finding that, at the time of importation, it had already been processed in the foreign country to such an extent that the product, by itself, was ready to be administered for medicinal purposes, and that the assay to which it was subjected after its arrival in this country was merely an adjustment process to meet the label under which it was offered and sold commercially. In reaching our conclusion we pointed out the similarity between the tariff provisions for drugs and medicinal preparations, stating that each contemplated commodities with therapeutic qualities and used for medicinal purposes, and recognized the distinction which had to be drawn in view of the separate provisions therefor and to give proper expression to a manifest congressional intent. The court said:

> We find authority in all of the cited cases for the distinction, for tariff purposes, between the term "drug," connoting a substance or material useful for medicinal purposes, and a "medicinal preparation," being a product, with therapeutic qualities, ready for medicinal use.

The legal principle enunciated there is controlling of the present issue, but the factual basis herein warrants a classification different from that found in the cited case. Unlike the hormone involved in the previous case, the cholic acid in question is not capable of use alone, to correct the condition to be remedied. For effective use, the merchandise in question must be combined with another substance, a spasmolytic agent with definite therapeutic qualities—in contradistinction to the inert diluent or carrier used with the hormone involved in the *Synthetic Patents Co., Inc.*, case, *supra*—and it is the mixing of both drugs that produces the practical medicinal preparation. The imported cholic acid is merely one of the active ingredients compounded into a finished product that is used with beneficial results, and under the rule laid down in the cited case it is a drug for tariff purposes. Its treatment in the country of exportation removed the imported commodity from its crude state as found in the natural bile material, and advanced it to a condition in which it is ready for use when imported. It is therefore properly classifiable as an advanced drug under paragraph 34, *supra*, and dutiable thereunder at 10 per centum ad valorem, and the court so holds.

That claim in the protest is sustained, and judgment will be rendered accordingly.